IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESUITA AGUIRRE,

    Plaintiff,

vs.                                                                       No. 2:18-cv-0153-WJ-GBW

ATRIUM MEDICAL CORPORATION,
GETINGE GROUP, GETINGE USA, INC.,
AND MAQUET CARDIOVASCULAR, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS GETINGE USA'S
AND MAQUET'S MOTION TO DISMISS
AND
GRANTING IN PART AND DENYING IN PART DEFENDANT ATRIUM'S MOTION
TO DISMISS**

THIS MATTER comes before the Court upon Defendant Atrium Medical Corporation's Motion to Dismiss, filed on February 1, 2019 **(Doc. 29)** and Defendants Getinge USA, Inc.'s and Maquet Cardiovascular, LLC's Motion to Dismiss, filed on February 1, 2019 **(Doc. 30)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants Getinge USA's and Maquet's motion is well-taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART**. The Court further finds that Defendant Atrium's motion is well taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

Plaintiff brings this case following an injury allegedly caused by Defendant Atrium's polypropylene mesh used in a hernia repair. Plaintiff alleges the following claims:

    Count I: Negligence

Count II: Strict Liability: Design Defect
Count III: Strict Liability: Manufacturing Defect
Count IV: Strict Liability: Failure to Warn
Count V: Breach of Express Warranty
Count VI: Breach of Implied Warranty

Plaintiff is a resident of Alamogordo, New Mexico. She underwent hernia surgery on or about October 25, 1994. **Doc. 25, ¶ 6.** Defendant Atrium's mesh product was used to repair her hernia. She had a second surgery in 1995.

On February 17, 2015, Plaintiff became ill with lower stomach pain, and she had trouble breathing. Her daughter took her to the emergency room. Her hands and fingers had turned blue, and Dr. William Pollard found that the mesh covering her hernia had embedded itself into a section of her bowels, causing an obstruction and twisting her intestines. She had emergency surgery on February 18, 2015, as Dr. Pollard feared the obstruction could burst and kill her. Dr. Pollard had to remove a section of her bowels that died, because it was not receiving blood and oxygen.

Her recovery took six weeks, during which she had to hire a nurse and was out of work. After eight months, once she healed, she needed another surgery to repair the hernia on November 4, 2015. Dr. Pollard repaired the hernia with a metal mesh, and she had to miss work for another four weeks.

Defendant Atrium Medical Corporation is a Delaware Corporation headquartered in New Hampshire. Plaintiff alleges that Defendant Getinge Group is a Swedish corporation. Defendant Getinge USA is a Delaware Corporation headquartered in New York. Defendant Maquet Cardiovascular LLC is a German corporation.

Plaintiff alleges that Getinge USA and Maquet acquired Atrium through a merger and acquired Atrium's assets and assumed Atrium's liabilities. She alleges Defendant Atrium

operates as a "business unit" of Getinge subsidiary Maquet. Plaintiff also alleges that Atrium is an alter ego and agent of Getinge USA and Maquet.

In response, Defendants Getinge USA and Maquet submitted affidavits asserting that Defendant Atrium is a separate, active entity, and Getinge USA and Maquet are "sibling" corporations who have a common parent corporation with Atrium. They assert facts, which, if true, would tend to show that Defendants Getinge USA and Maquet do not control Atrium's day-to-day activities.

## DISCUSSION

I. **Personal Jurisdiction over Getinge USA and Maquet Cardiovascular.**

Defendants Getinge USA and Maquet argue this Court lacks personal jurisdiction over them. Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum. *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted). The New Mexico long-arm statute extends personal jurisdiction to the extent permitted by due process. *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 48 P.3d 50, 54 (N.M. 2002). Therefore, in this diversity case, the Court will generally limit its analysis to binding Tenth Circuit and United States Supreme Court precedent analyzing personal jurisdiction under the due-process clause. *Federated Rural Electric Ins. Corp. v. Kootenai Electric Coop.,* 17 F.3d 1302, 1305 (10th Cir. 1994); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

A. **Fed. R. Civ. P. 12(b)(2) standard**

Plaintiff bears the burden of establishing personal jurisdiction over Getinge USA and Maquet. *See Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996). Plaintiff need only make a *prima facie* showing of jurisdiction to defeat a motion to dismiss. *See*

*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). If the facts in the complaint are controverted, Plaintiff may make the required showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction. *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). All factual disputes must be resolved in Plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Court need only accept as true well-pled facts, i.e. facts that are non-conclusory and non-speculative.

    B.    **Personal Jurisdiction and Due Process.**

To comport with due process, Plaintiff must establish that Defendants Getinge USA and Maquet have "such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1159–60 (10th Cir. 2010) (quotations omitted). If Plaintiff does so, she must also establish that exercise of personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. *Id.*; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014).

"This minimum-contacts standard may be satisfied by showing general or specific jurisdiction." *Bartile Roofs, Inc*, 618 F.3d at 1159-60; *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492–93 (10th Cir. 2012). Plaintiff has the burden of establishing personal jurisdiction over Getinge USA and Maquet. *See Kuenzle v. HTM Sport- Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996). Plaintiff asserts that New Mexico has both general and specific jurisdiction over Defendants Getinge USA and Maquet.

    1.    <u>General Jurisdiction.</u> General jurisdiction requires that a defendant have contacts with New Mexico "so continuous and systematic as to render [it] essentially at home in

the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ––– U.S. –––, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011), *cited in Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012); *Helicopteros Nacionales De Columbia v. Hall*, 466 U.S. 408, 415; *Benton v. Cameco Corp., 375 F.3d 1070 (10th Cir. 2004).* "Unlike for specific jurisdiction, the litigation need not arise from the defendant's activities in the forum." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012).

Here, Plaintiff appears to argue that there is general jurisdiction over Defendants Getinge USA and Maquet, through their relationship with Defendant Atrium. **Doc. 33, p. 8.** But Atrium has not conceded general jurisdiction at all. Moreover, Plaintiff has not made a prima facie case that Atrium is "at home" in New Mexico. Plaintiff concedes that Atrium is a Delaware corporation with its principal place of business in New Hampshire. Moreover, Defendant submitted unrebutted evidence of the same. Therefore, general jurisdiction is not a basis to assert personal jurisdiction over Defendants Getinge USA and Maquet.

2. <u>Specific Jurisdiction</u>. New Mexico may assert specific jurisdiction over an out-of-state defendant when the defendant has purposefully directed its activities at residents of New Mexico and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Crop. v. Rudzewicz*, 471 U.S. 462 (1985); *See also Employers Mut. Cas. Co. v. Bartile Roofs*, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010) ("a plaintiff satisfies the…standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities,") (internal citations and

quotation marks omitted). The injury must arise out of "actions by the defendant *[itself]* that create a substantial connection with the forum state." *OMI Holdings, Inc.,* 149 F.3d at 1091.

Plaintiff alleges that the mesh was implanted in 1994. Getinge USA and Maquet first became involved with Atrium in 2011. Plaintiff does not allege that the injuries arise out of or relate to activities Getinge USA and Maquet purposefully directed back in 1994. Therefore, it appears that Defendants Getinge USA and Maquet could not have taken any action in New Mexico that would have given rise to Plaintiff's claims.

    **C.**    **Alter Ego or Agency Theory**.

It is undisputed, however, that there is jurisdiction over Defendant Atrium. Plaintiff alleges that there is also jurisdiction over Defendants Getinge USA and Maquet, because Atrium is their alter ego or agent. Because the *alter ego* and agency analyses for purposes of this case are substantially similar, the Court will analyze them together. *Weisler v. Cmty. Health Sys., Inc.*, 2012 WL 4498919, at *12 (D.N.M. 2012) (Vazquez, J.) (under either agency or *alter ego* theory, court inquires whether parent corporation "dominat[ed] the day to day business decisions of the subsidiary and a disregard[ed] the corporate entity of the subsidiary").

Generally, personal jurisdiction over a subsidiary corporation does not give a state jurisdiction over the parent corporation, even if the parent wholly owns the subsidiary. *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994); *see also Alto Eldorado Partnership v. Amrep Corp.*, 138 N.M. 607, 618 (Ct. App. 2005) ("the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state."). However, a court may deem a subsidiary the alter ego of a parent and pierce the corporate veil where (1) "the parent's control goes beyond that normally

exercised by a majority shareholder…" and is "so complete as to render the subsidiary an instrumentality of the parent," or (2) "the subsidiary does an act at the direction of the parent, or in the course of the parent's business." *Jemez Agency*, 866 F. Supp. at 1343. In other words, "the Court may properly invoke jurisdiction over a foreign parent company predicated on the acts of one of its subsidiaries if the parent company actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's business entity." *Quimbey by Faure v. Cmty. Health Sys., Inc.*, 2015 WL 13651236, at *8 (D.N.M. 2015) (Gonzales, J.); *Berry v. Bryant*, 2012 WL 12819204, at *4 (D.N.M. 2012) (Herrera, J.) (if parent's control is "so complete as to render the subsidiary an instrumentality of the parent, ... the Court may deem the subsidiary the mere 'alter ego' of the parent, and accordingly, may pierce the corporate veil.") (quoting *Jemez)*.

Initially, the Court notes that Plaintiff's complaint does not allege *at all* that Getinge USA is the parent corporation or alter ego of Atrium. Rather, Plaintiff's allegations focus on Getinge Group, apparently a separate entity.[1] Therefore, Plaintiff failed to make a *prima facie* case against Getinge USA, which is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

However, Plaintiff did make a *prima facie* case against Maquet. Maquet then rebutted Plaintiff's jurisdictional allegations in an affidavit. **Doc. 16.** Maquet's affidavit asserts that Atrium is an independent entity and a mere "sibling" corporation to Maquet. Defendants asserted facts, if believed, appear to show that Maquet does not control the day-to-day operations of Atrium. In response, Plaintiff presented evidence that the defendants now use a common brand, and also cites to a news article, in which Atrium is described as an independent business unit of Getinge Group and Maquet Cardiovascular.

---

[1] Defendants assert that Getinge Group is not a "legal entity" and otherwise has not been served.

There may be circumstances where Defendant Maquet may have liability under either an alter ego or successor theory. *See, e.g., Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 19, 138 N.M. 607, 614, 124 P.3d 585, 592 (alter ego theory is primarily used to pierce the corporate veil and force a corporation's shareholders or parent corporation to be held liable for the subsidiary's debts). However, it does not appear possible for Plaintiff to prove these allegations without discovery. Therefore, as explained below, the Court will allow limited jurisdictional discovery as to Maquet.

**D.** **Discovery.**

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir.1975); *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir.2012).

Here, the Court concludes that the facts necessary to support Plaintiff's allegations are not available to Plaintiff without discovery, and Plaintiff would be prejudiced absent an opportunity to conduct discovery. Therefore, the Court will allow limited jurisdictional discovery on (1) whether Maquet controls the day-to-day operations of Atrium; (2) whether Atrium continues to operate as an entity following the merger/acquisition, (3) and whether Maquet may have successor liability.

**II.** **Statute of Limitations as to Atrium claims.**

**A.** **Tort Claims**.

Defendant Atrium argues that Plaintiff's tort claims are time barred, as this case was allegedly filed more than three years after the claims accrued. Plaintiff argues they were filed within three years of discovery of the claim, and that she did not discover the claims until February 18, 2015.

The discovery rule provides that these three years begin to run "when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Williams v. Stewart*, 112 P.3d 281, 285 (N.M. Ct. App. 2005). The focus is "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." *Alexander v. Oklahoma,* 382 F.3d at 1216 (internal citations omitted).

At this stage in the proceedings, Plaintiff does not have the burden to anticipate and plead facts to rebut affirmative defenses such as the statute of limitations. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018). It is only appropriate to dismiss where the statute of limitations violation is clear on the face of the complaint. Where, as here, Plaintiff argues the statute of limitations had not yet accrued under the discovery rule, dismissal is generally not appropriate. *Bistline v. Parker*, 918 F.3d 849, 876 n.12 (10th Cir. 2019). Here, Plaintiff has asserted that she did not learn of facts that support a claim until February 17 or February 18, 2015, when she had her emergency surgery. She filed her complaint on February 15, 2018. Defendants argue that she should have inquired further into her claim because of prior pain or complications, but that appears to be a fact issue to be addressed at summary judgment or trial.

Although she had a second surgery in 1995, there are no details in the complaint to infer that the surgery had to do with the mesh, or facts that would lead a reasonable person to inquire

9

further into whether a claim existed. Therefore, the Court concludes that the statute of limitations violation is not clear on the face of the complaint and declines to dismiss the tort claims on that basis.

### B. <u>Warranty Claims</u>.

Defendant Atrium also argues the warranty claims are time barred. Plaintiff pled an express warranty claim and an implied warranty claim. Here, the mesh was apparently delivered in 1994. "Under § 55–2–725, actions for breach of warranty must be brought within four years of delivery, unless the warranty explicitly guarantees future performance. N.M. Stat. Ann. § 55–2–725. "Implied warranties, like those at issue here, do not explicitly guarantee future performance." *AIG Aviation Ins. v. Avco Corp.*, 709 F. Supp. 2d 1124, 1131–32 (D.N.M. 2010); *See also Nowell v. Medtronic Inc.*, No. CIV 17-1010 JB\SMV, 2019 WL 1434971, at *49 (D.N.M. Mar. 29, 2019) (dismissing implied warranty claim). Therefore, any implied warranty claim is time-barred as it was delivered more than four years before this case was filed.

However, as explained above, Plaintiff does not have the duty to plead facts to overcome Defendants' affirmative defenses. Since there is nothing in the complaint to indicate whether or not the express warranty guaranteed future performance, a statute of limitations violation is not clear on the face of the complaint. Therefore, Plaintiff's implied warranty claim is **DISMISSED**, but her express warranty claim remains.

### III. <u>Plaintiff stated a claim against Atrium Medical Corporation</u>.

Defendant Atrium seeks dismissal under Fed. R. Civ. P. 12(b)(6) of certain claims on the following limited grounds.[2]

### A. <u>Legal Standard</u>.

---

[2] Defendant Maquet joined Defendant Atrium's 12(b)(6) motion without adding additional argument. Therefore, the Court grants or denies Maquet's motion to the same extent as Defendant Atrium's motion.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

### B.     Design Defects and Inherently Unsafe Products.[3]

Defendant Atrium argues that the design defects products liability claim fails as a matter of law, because hernia mesh is incapable of being made safe. Generally, a seller of a defective, unreasonably dangerous product is strictly liable for physical harm to a consumer. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 852 (10th Cir. 2003), *citing* Restatement (Second) of Torts, Section 402A. However, sellers of "inherently unsafe" products are not strictly liable under a design defects theory. *Perfetti v. McGhan Med.*, 1983-NMCA-032, ¶ 10, 99 N.M. 645, 649, 662 P.2d 646, 650, *citing* Restatement (Second) of Torts, § 402(A), cmt. k.

Here, Defendant Atrium did not cite to any case law concluding as a matter of law that all *hernia mesh* is incapable of being made safe, and this issue otherwise appears to require a record. Defendant has not cited to any case law in New Mexico which as a matter of law bars design defect claims as to all medical devices as "inherently unsafe". *See Jones v. Minnesota Min. & Mfg. Co.*, 1983-NMCA-106, ¶ 82, 100 N.M. 268, 281, 669 P.2d 744, 757 (concurrence concluded that radioactive "seeds" implanted in body were inherently unsafe); *Perfetti v.*

---
[3] It is unclear whether Plaintiff agreed to drop her manufacturing defect claims, and Defendants do not otherwise provide grounds for the dismissal of that claim. Therefore, the Court declines to rule on the viability of the manufacturing defect claim.

11

*McGhan Med.*, 1983-NMCA-032, ¶ 10, 99 N.M. 645, 649, 662 P.2d 646, 650 (breast implants considered inherently unsafe as to risk of leakage).

      C.      **Failure to Warn.**

Defendant also alleges that Plaintiff failed to sufficiently allege facts to support her failure to warn claims. "A plaintiff asserting causes of action based on a failure to warn must prove that, (1) no warning was provided or the warning was inadequate; and (2) the inadequacy or absence of the warning caused the plaintiff's injury." *Silva v. Smithkline Beecham Corp.*, No. 31,276, 2013 WL 4516160, at *3 (N.M. Ct. App. Feb. 7, 2013), *citing Richards v. Upjohn Co.,* 95 N.M. 675, 678, 625 P.2d 1192, 1195 (Ct.App.1980) ("[Causation] is a factual issue, unless all facts regarding causation are undisputed or, as a matter of law, there is an independent intervening cause."). Moreover, under these circumstances, a medical device manufacturer must warn the doctor, not the patient. *Perfetti*, 662 P.2d at 650 (a manufacturer of a product… which is obtainable only through the services of a physician, fulfills its duty if it warns the physician of the dangers attendant upon its use, and need not warn the patient as well.").

Plaintiff adequately pled the failure to warn claim. She alleges the physician was not warned of the risks of the hernia mesh, which she set out in her complaint. Plaintiff also alleges there were alternatives to using hernia mesh, and had Defendants warned about the risks of using the mesh, the physician would have used safer methods to repair the hernia. **Doc. 25, ¶ 48-55, 129, 133, 134, 138,** *et al*. Assuming these allegations are true, Plaintiff stated a claim for failure to warn.

      D.      **Notice of Warranty Claims.**

Defendant argues that the warranty claims are barred, because plaintiff failed to allege she filed a notice within a reasonable time under NMSA § 55-2-607. Notably, Plaintiff did not

12

respond to this argument, address whether this statutory provision was applicable, or address whether notice was reasonable.

"The failure to allege sufficient notice may be a fatal defect in a complaint alleging breach of warranty." *Badilla v. Wal-Mart Stores E., Inc.*, 2017-NMCA-021, ¶ 10, 389 P.3d 1050, 1054. Plaintiff did not address notice in her complaint. Therefore, Plaintiff's express warranty claim is **DISMISSED** with leave to amend.

*Badilla* held that filing a complaint within the applicable statute of limitations does not categorically establish that notice was reasonable. *Id.* Rather, reasonableness of notice appears to be fact specific. Therefore, it appears that Plaintiff bears the burden of pleading facts that establish reasonableness, including the prejudice suffered by the Defendant in the delay, such as spoliation of evidence. *Badilla v. Wal-Mart Stores E., Inc.*, 2017-NMCA-021, ¶ 21, 389 P.3d 1050, 1057 ("Factors to be considered in determining reasonableness of notice include the obviousness of the defect, the perishable nature of the goods, and possible prejudice to the seller from the delay.").

## CONCLUSION

Plaintiff's implied warranty claim is dismissed with prejudice. Moreover, her express warranty claim is dismissed with leave to amend within **fourteen (14) days**. Getinge USA is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. The rest of Plaintiff's claims remain, and Plaintiff will be allowed to conduct jurisdictional discovery to the limited extent specified herein.

**IT IS THEREFORE ORDERED** that Defendants Getinge USA and Maquet's motion to dismiss **(Doc. 30)** is hereby **GRANTED IN PART AND DENIED IN PART** at this time for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant Getinge USA is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

**IT IS FURTHER ORDERED** that Plaintiff's request for jurisdictional discovery as to Defendant Maquet is hereby **GRANTED** to the extent described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant Atrium's Motion to Dismiss (**Doc. 29**) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the express warranty claim is **DISMISSED** with leave to amend. Plaintiff may amend her express warranty claim within **fourteen days (14)** days. If Plaintiff fails to do so, the dismissal shall be with prejudice without further notice.

**IT IS FINALLY ORDERED** that the jurisdictional discovery matter is referred to United States Magistrate Judge Gregory B. Wormuth, to determine discovery deadlines and handle discovery matters. The outline of discovery issues above may be modified in any way that Judge Wormuth finds appropriate and necessary. Additionally, at the end of this limited discovery, a new briefing schedule will be set by Judge Wormuth for the parties to revisit the jurisdictional question incorporating information obtained from jurisdictional discovery.

_____
CHIEF UNITED STATES DISTRICT JUDGE